WOFFORD OIL CO. INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8853. Decided October 20, 1926.

The petitioner and the Wofford Oil Co. of Tennessee were not affiliated corporations for the years 1920 and 1921.

*Edward McCarthy, Jr., Esq.,* for the petitioner.
*M. N. Fisher, Esq.,* for the respondent.

The petitioner brings this proceeding for the redetermination of deficiencies in income and profits tax for the years 1920 and 1921 in the respective amounts of $6,528.02 and $7,729.22. The only question involved is whether the petitioner and the Wofford Oil Co. of Tennessee were affiliated corporations during those years.

#### FINDINGS OF FACT.

For several years prior to 1919, G. T. Wofford had been engaged in the oil business in Birmingham, Ala., and had developed a blend of gasoline and benzol which he desired to market under his own trade-name. In April, 1919, he organized the petitioner corporation under the laws of Alabama, to engage in the sale of this gasoline in Birmingham and vicinity under the trade-name of " Woco-Pep."

A contract was entered into between Wofford and petitioner by which petitioner contracted to purchase all of its gasoline from Wofford, who contracted to supply it at a price not less than 5 cents under the retail or consumers' price in Birmingham. Petitioner dealt in gasoline as a jobber, making its sales to the retail dealers.

During 1920 and 1921, 75 per cent of the capital stock of the petitioner was owned by Wofford and 25 per cent was owned by one J. G. Johnston, who was manager of the company. Johnston's stock was sold to him by Wofford after he became manager, and during the taxable years payment had not been made in full. Wofford held Johnston's notes for the unpaid balance and, as collateral thereto, stock of the petitioner of a par value at least equal to the unpaid indebtedness. Johnston's salary in 1920 was $6,000, which was increased during 1921 or 1922.

In 1920, Wofford came to the office of one Bunn, then a resident of Birmingham who had formerly been secretary of the Chattanooga Manufacturers' Association, and stated that he had bought more benzol than he could use and that he desired to establish a plant in another city to distribute his product. Bunn suggested Chattanooga and went there with Wofford to help organize the plant. In order to secure capital, and also to identify the plant as a local industry, Wofford desired to sell a part of the stock of the proposed company to Chattanooga residents. Bunn interested ten business men of that city in the project, who agreed to purchase stock after a committee had investigated the business then being conducted in Birmingham by the taxpayer. In June, 1920, the Wofford Oil Co. of Tennessee was incorporated. From the date of organization of the Tennessee corporation in 1920 and throughout the taxable year 1921 the capital stock of the Tennessee corporation was owned as follows:

| Name and address of stockholder | Number of shares | Per cent |
|---|---|---|
| Wofford Oil Co., Inc., Birmingham, Ala | 2,480 | 62.0 |
| O. L. Bunn, Birmingham, Ala | 120 | 3.0 |
| Z. W. Wheland, Chattanooga, Tenn | 140 | 3.5 |
| Fred Bryan, Chattanooga, Tenn | 140 | 3.5 |
| L. W. Llewellyn, Chattanooga, Tenn | 140 | 3.5 |
| James Johnston, Chattanooga, Tenn | 140 | 3.5 |
| M. M. Hodges, Chattanooga, Tenn | 140 | 3.5 |
| E. Y. Chapin, Chattanooga, Tenn | 140 | 3.5 |
| Scott Probasco, Chattanooga, Tenn | 140 | 3.5 |
| J. J. Mahoney, Chattanooga, Tenn | 140 | 3.5 |
| Gaston C. Raoul, Chattanooga, Tenn | 140 | 3.5 |
| J. C. Guild, Chattanooga, Tenn | 140 | 3.5 |

A contract was entered into between Wofford and the Tennessee corporation for the purchase of its gasoline from Wofford. This contract was similar to the contract between Wofford and petitioner.

The business of the Tennessee corporation proved unsuccessful. No meetings of stockholders or directors, except the organization meetings, were held during the years in question. Some of the stockholders were dissatisfied with the management of the corporation. and discussed the matter among themselves. Wofford was advised of this dissatisfaction by either Chapin or Bunn. The manage-

ment of the Chattanooga plant was changed at least once during the years involved.

Sometime during 1921 a discharged manager circulated reports concerning the affairs of the company which caused uneasiness among the stockholders. Wofford came to Chattanooga and at lunch with the stockholders discussed the situation of the company with them. Bryan, the only one of the local stockholders who was at all familiar with the retail oil business, complained that the company was paying more for its gasoline than it could be bought for in the open market. At this meeting Wofford stated in general terms that he would see that none of the stockholders lost anything on their investments.

Each of the Chattanooga stockholders had substantial business interests of his own and purchased the stock as an investment, having no intention of taking an active part in the affairs of the company. Although dissatisfied with the operations of the company, they felt that by force of circumstances they were compelled, in the management of the company, to rely upon the judgment and integrity of Wofford, who had made a success of the Birmingham business.

At some time subsequent to 1921, Wofford delivered to each of the Chattanooga stockholders 8 per cent preferred stock of the petitioner in exchange, par for par, for the stock of the Tennessee corporation.

The petitioner claimed to be affiliated with the Wofford Oil Co. of Tennessee for the years 1920 and 1921, and filed returns accordingly. The Commissioner has denied that the corporations were affiliated and determined deficiencies in income and profits tax of $6,528.02 for 1920 and $7,729.22 for 1921.

OPINION.

PHILLIPS: Section 240(b) of the Revenue Acts of 1918 and 1921 provides:

> For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

In this proceeding we find that Wofford, who directed the business policies of both companies, owned 75 per cent of the stock of one company, which in turn owned 62 per cent of the stock of the second company. It becomes necessary for us to determine whether, under the circumstances shown by the proof, 62 per cent constitutes substantially all of the stock and, if not, whether a sufficient amount of the stock not owned by petitioner was controlled by it, or owned or controlled by closely affiliated interests.

In determining whether interests are closely affiliated, it is proper that we should look to the relationship which exists between the

various interests. As between the petitioner and the stockholders of the Tennessee corporation there appears to be nothing which would lead one to believe their interests were closely allied. It is true that each was dealing in the same product and that each purchased this product from the same source. Each, however, dealt independently of the other; each had its own independent income and was an entirely separate and distinct business enterprise. There was no such community of business enterprise, no such interweaving of the corporate interests of the petitioner and the Tennessee corporation as would indicate any affiliation of interests between the petitioner and the minority stockholders of the Tennessee corporation.

We come now to consider whether Wofford controlled substantially all the stock of the two corporations. Assuming that he did control the stock of the petitioner (and of this we have some doubt), and thereby controlled 62 per cent of the stock of the Tennessee corporation, we see no evidence of any control of the remaining 38 per cent. Each of these stockholders appears to have been of substantial means, under no financial or other obligation to Wofford, with a business of his own and the ability and desire to look after his own interests. Although they acquiesced in the management by Wofford, they were not satisfied and expressed their dissatisfaction. There were no formal stockholders' meetings, but at the only informal meeting of which we have any evidence most of the stockholders appear to have manifested sufficient interest to attend in person. The attitude of the stockholders may be summarized in the testimony given by one of them in answer to the question whether the Chattanooga stockholders were perfectly satisfied with the way things were run:

No, sir, they were not satisfied; we did not know much about it but we were not satisfied with the way things were run, but we could not do anything about it.

Such an attitude of mind may indicate a feeling of helplessness to remedy a situation, but surely it does not indicate any control of the stock by Wofford.

*The deficiencies are redetermined to be $6,528.02 for 1920 and $7,729.22 for 1921. Order will be entered accordingly.*